Argued and submitted March 5, affirmed May 23 2001

# TERRANCE L. TUCKER,
*Appellant,*

*v.*

# Robert LAMPERT,
Superintendent,
Snake River Correctional Institution,
*Respondent.*

99-04-30-461-M; A107548

26 P3d 830

Bob Pangburn, Caldwell, Idaho, filed the brief for appellant.

Lore Bensel, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

■ ■　Plaintiff appeals from a judgment dismissing his petition for a writ of habeas corpus. He contends that the Board of Parole and Post-Prison Supervision (Board) discharged his sentence on a first-degree rape conviction when it reset his parole release date to reflect a later conviction for unauthorized use of a motor vehicle (UUMV). Plaintiff contends that his continued detention is unlawful because his UUMV sentence has since been fully served. Plaintiff also contends that the trial court erred in assessing attorney fees against him. We review the dismissal for errors of law, *Shelton v. Armenakis*, 146 Or App 521, 524, 934 P2d 512 (1997). We also review the decision to impose attorney fees for errors of law, because plaintiff challenges the statutory authority for the award. We affirm.

In May 1988, plaintiff was convicted of first-degree rape. The sentencing court imposed an indeterminate term of 168 months' imprisonment, with a mandatory minimum term of 84 months. *See* ORS 144.110. In November 1988, plaintiff was convicted of UUMV. For that crime, he was sentenced to a term of imprisonment not to exceed 60 months to be served consecutively to his rape sentence. In January 1989, the Board set the initial term of imprisonment for the rape conviction: a 60-month prison term with an initial parole release date of January 30, 1993. The Board noted that it was not addressing the UUMV sentence at that time. On May 16, 1989, the Board set the inception date for the UUMV sentence to coincide with the parole release date on the rape conviction, set a prison term of six months for the UUMV conviction, and calculated a release date of July 29, 1993. The Board did not state—in that order, or in any other order—that it was discharging plaintiff's sentence on the rape conviction.

The Board later advanced plaintiff's release date by two months for good time, and plaintiff was paroled in May 1993. In January 1996, after several parole violations, the Board denied plaintiff rerelease and reset his release date for April 9, 2003. In February 1999, the Board further adjusted

plaintiff's release date to February 21, 2003, based on additional good time. At that time, the Board calculated the expiration date of plaintiff's last consecutive sentence as February 13, 2007.

Plaintiff filed this petition for habeas corpus relief in April 1999, alleging that his ongoing detention was unlawful because he had fully served his sentences on his rape and UUMV convictions. After a hearing, the trial court denied the writ and entered a judgment of dismissal. The court also ordered defendant to repay $475 in court-appointed attorney fees.

Plaintiff assigns error first to the trial court's dismissal of his action. Plaintiff contends that his six-month UUMV sentence was an additional consecutive sentence under OAR 225-25-005 (1988),[1] which provided:

"(1)   The commencement date for the prison term is the date on which the prisoner is delivered to custody of the Department of Corrections for the purpose of serving the sentence.

"(2)   In the case of additional consecutive sentences, the existing parole release date shall be rescinded and shall become the commencement date for the new sentence."

Plaintiff reads the rule to dictate that January 29, 1993—his initial parole release date on the rape conviction—marked the commencement date of his UUMV sentence. According to plaintiff, a consecutive sentence cannot commence until the sentence that it is intended to follow has been discharged. For that proposition, he relies on *State ex rel Millard v. Wagy*, 99 Or App 274, 277, 782 P2d 949 (1989), and *State v. DeChenne*, 39 Or App 901, 903, 594 P2d 831 (1979). From that proposition, plaintiff reasons that, first, when his UUMV prison sentence commenced, it necessarily discharged his rape sentence, and second, plaintiff's 60-month

---

[1] Plaintiff's sentence and parole determinations are governed by the statutes and administrative rules in effect in 1988 when his offenses were committed. *See* ORS 144.050 (authorizing Board to set terms of parole for offenders whose offenses were committed prior to November 1, 1989); *Williams v. Board of Parole*, 112 Or App 108, 828 P2d 465 (1992) (holding that the petitioner was entitled to be considered for release under the rules in effect when his offenses were committed).

UUMV sentence was fully served in 1998. Therefore, plaintiff argues, his continued incarceration is unlawful.

In rejecting plaintiff's analysis, the trial court provided the following reasoning:

> "Petitioner takes the position that because he served the original prison term of 60 months on his conviction for Rape I and then served the 6 month prison term for his conviction for UUMV before he was paroled, that the remainder of the sentence for the Rape I charge is eliminated and he cannot be required to serve the remainder of his sentence for Rape I upon revocation of his parole. The Petitioner fails to understand the difference between *sentence* and *prison term* under the pre-guidelines statutory framework. * * * The completion of the initial prison term does not complete the sentence." (Emphasis in original.)

For reasons explained below, the trial court's conclusion is correct.

An administrative body, such as the Board, possesses only those powers that the legislature grants and cannot exercise authority that it does not possess. *Gaynor v. Board of Parole*, 165 Or App 609, 612, 996 P2d 1020 (2000). The legislature has conferred on the Board a limited power to release prisoners on parole and to revoke that parole under specified circumstances and conditions. *See* ORS 144.110-.395. "The Board may also in effect shorten a sentence by discharging a defendant from parole under authority of ORS 144.310." *State v. Dinkel*, 34 Or App 375, 383, 579 P2d 245 (1978). However, the power of discharge granted to the Board is circumscribed. *Former* ORS 144.310 (1987)[2] provided:

> "When a paroled prisoner has performed the obligations of parole for such time as satisfies the State Board of Parole that the prisoner's final release is not incompatible with the prisoner's welfare and that of society, the board may make a final order of discharge and issue to the paroled prisoner a certificate of discharge; but *no such order of discharge shall be made within a period of less than six months after the date of release on parole * * *.*" (Emphasis added.)

---

[2] The legislature repealed ORS 144.310 in 1993. *See* Or Laws 1993, ch 680, § 7. All subsequent references are to statutes in effect in 1988, when plaintiff committed his crimes.

In 1989, when the Board reset plaintiff's parole release date to reflect the commencement of his UUMV sentence, plaintiff had served less than eight months of his rape sentence. Four more years would pass before the Board would grant him parole. Because plaintiff had not yet been paroled on the rape conviction in 1989, the Board lacked authority, at that time, to discharge his sentence on that conviction. Accordingly, plaintiff's argument that the Board necessarily discharged the rape sentence when it set the commencement date for his UUMV prison term fails in light of ORS 144.310.

That conclusion is not undercut by this court's decisions in *DeChenne* and *Wagy*. In *DeChenne*, a Clackamas County court suspended execution of a five-year sentence and placed the defendant on probation. A week later, a Multnomah County court sentenced the defendant to an eight-year sentence for another crime. The Multnomah County sentence was imposed consecutively to the first sentence. The Clackamas County court later revoked the defendant's probation and executed the suspended five-year sentence to run concurrently with the Multnomah County sentence. On appeal, the defendant argued that the Multnomah County court lacked authority to impose a consecutive sentence to follow a sentence which had, at that time, not been executed. We agreed:

> "The principal requirement in imposing a consecutive sentence is that there be a sufficiently definite event for the commencement of the consecutive sentence in order that the Corrections Division may implement that sentence. Because the Multnomah County sentence was imposed prior to the execution of the Clackamas County sentence it would be calculated by the Corrections Division as the first sentence to commence. Consequently it would not commence after the termination of the Clackamas County sentence. That latter sentence, in turn, would run concurrent with the Multnomah County sentence. That is obviously not the intention of the Multnomah County Circuit Court. The court erred in ordering the sentence to run consecutive to the Clackamas County sentence. The case must be remanded for resentencing. Upon remand the Multnomah County Circuit Court may impose a sentence to run concurrent with or consecutive to the executed Clackamas County sentence." *DeChenne*, 39 Or App at 904 (citation omitted).

In *Wagy*, this court considered whether a trial court could simultaneously impose consecutive sentences for contempt arising from separate probation violations, despite the fact that neither sentence had been executed at the time the other was imposed. 99 Or App at 277. The court distinguished *DeChenne* by stating that "[b]ecause the consecutive sentence for the February 16 contempt cannot commence before execution of the February 9 sentence, the trial court's judgment may be applied as intended." *Id.* at 278. As understood in light of *Wagy*, *DeChenne* held only that a sentence may not be imposed consecutively to a sentence that has not been executed. No such sentencing anomaly is involved here. When the court imposed a consecutive sentence on defendant's UUMV conviction, the preexisting rape conviction was not suspended; it had already been executed. Therefore, *DeChenne* does not help plaintiff.

Finally, our decision in *State ex rel Caughey v. Middle*, 167 Or App 261, 1 P3d 495 (2000), demonstrates a logical fallacy in plaintiff's argument. In *Caughey*, a prisoner argued that the imposition of a new consecutive sentence discharged his sentences on earlier convictions on which he had been paroled. We rejected that argument, stating:

> "Were that the case, then those who received *concurrent* sentences for new crimes often would serve longer sentences than those who received *consecutive* sentences. Likewise, a parole violator whose violation did *not* involve new criminal activity could be required to serve out his or her sentence, while one who committed a new crime for which he or she received a consecutive sentence could not. Under appellant's rationale, more egregious parole violations would essentially be rewarded and lesser parole violations punished more severely." *Id.* at 266 n 3 (emphasis in original).

Likewise, plaintiff's argument would, if endorsed by this court, produce similarly illogical results. If plaintiff were correct, the Board's 1989 action resetting his parole release date on the rape conviction based on the imposition of a new consecutive sentence would remove the Board's authority to adjust the previously imposed rape sentence in order to address plaintiff's new criminal offense. Thus, an offender who violates parole by, for example, repeatedly failing to

inform his parole officer of a new address, could be returned to prison for the remainder of his sentence, while another, such as plaintiff, would be discharged from the first sentence merely because the sentence on his new conviction was imposed consecutively. A defendant committing new criminal offenses would receive more lenient treatment than a defendant who committed technical parole violations without reoffending. Because the Board's 1989 action did not impliedly discharge plaintiff's sentence for rape, we need not countenance the result advocated by plaintiff.

■    Plaintiff next assigns error to the trial court's order requiring him to pay $475 in attorney fees incurred on his behalf in this proceeding. Plaintiff argues that the order was unauthorized by law or amounted to an abuse of discretion on several grounds. Defendant responds that none of plaintiff's arguments were preserved before the trial court and that, in any event, the assessment was authorized under ORS 151.505.[3] Plaintiff replies that the court plainly erred in imposing attorney fees under ORS 151.505, because the "accusatory instrument" in his *underlying criminal prosecution* was filed before January 1, 1998, the effective date of the statute.

Plaintiff relies on *Alexander v. Johnson*, 164 Or App 235, 990 P2d 929 (1999), in support of his plain error argument. In *Alexander*, a post-conviction petitioner initiated an action before January 1, 1998, the effective date of ORS

---

[3] ORS 151.505 provides, in part:

"(1) At the conclusion of a case or matter in which the first accusatory instrument or petition in the trial court was *filed after January 1, 1998,* and in which the court appointed counsel to represent a person, a trial or appellate court may include in its judgment an order that the person repay in full or in part the administrative costs of determining the eligibility of the person for appointed counsel and the costs of the legal and other services that are related to the provision of appointed counsel.

"* * * * *

"(4) The court may not order a person to pay costs under this section unless the person is or may be able to pay the costs. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the person and the nature of the burden that payment of costs will impose. *The determination of the ability of a person to pay costs and the amount of costs to be paid shall be subject to the guidelines and procedures issued by the State Court Administrator under ORS 151.487.*" (Emphasis added.)

151.505. Although the petitioner had not preserved his argument that ORS 151.505 did not authorize an assessment of attorney fees against him, we concluded that an award under that statute would be plain error, because the *post-conviction petition* was filed before the effective date of the statute. In this case, on the other hand, plaintiff filed his petition on April 20, 1999, *after* the effective date of ORS 151.505. The judgment requiring the payment of attorney fees was entered in this case, *not* in the underlying criminal proceeding. Likewise, the court assessed attorney fees that were incurred in this case and *not* in the criminal proceeding. Therefore, the date on which the criminal proceeding was commenced is immaterial to the application of ORS 151.505. *See Copeland v. Lampert*, 174 Or App 346, 27 P3d 144 (2001). Plaintiff's reliance on *Alexander* is thus misplaced.

■        Plaintiff makes what appears to be an additional plain error argument based on *Alexander*. He contends that ORS 151.505(4) required the trial court to determine whether he was able to pay attorney fees in accordance with ORS 151.487(1).[4] Plaintiff asserts:

> "The Court of Appeals recently determined that the plain language of ORS 151.487 only permits the court to order a person to pay costs or fees '*at the time* the court is determining that a person is indigent and qualifies for court-appointed counsel.' [*Alexander*, 164 Or App at 239]. Thus, the court did not have the authority to [impose] attorney fees as a judgment in this case." (Emphasis in original.)

Plaintiff's apparent factual premise that the court did not order him to pay attorney fees at the time it was determining

---

[4] ORS 151.487(1) provides:

"If in determining that a person is eligible for court-appointed counsel after applying the guidelines and standards issued by the State Court Administrator under ORS 151.485, the court finds that the person has financial resources that enable the person to pay in full or in part the administrative costs of determining the eligibility of the person and the costs of the legal and other services to be provided at state expense that are related to the provision of appointed counsel, the court shall order the person to pay to the State Court Indigent Defense Account in the General Fund, through the clerk of the court, the amount that it finds the person is able to pay without creating substantial hardship in providing basic economic necessities to the person or the person's dependent family. The amount that a court may order the person to pay shall be subject to the guidelines and procedures issued by the State Court Administrator as provided in subsection (4) of this section."

that he was qualified for appointed counsel is mistaken. The record demonstrates that the court issued an order requiring plaintiff to pay his attorney fees in the process of determining whether plaintiff was eligible for court-appointed counsel.[5] The fact that the order was later reaffirmed in the judgment dismissing plaintiff's petition does not indisputably demonstrate that the court violated ORS 151.487. Accordingly, the court did not plainly err. We do not reach plaintiff's remaining unpreserved arguments.

Affirmed.

---

[5] Plaintiff moved for court-appointed counsel on April 15, 1999, and on the same day was given a "Notice and Order Regarding Repayment Requirements for Indigent Defense Attorney Fees and Expenses and Application Fee for Court-Appointed Counsel." The notice and order stated:

"When you are provided a court appointed attorney, *you have to repay the cost of your court-appointed attorney* * * *. *You will have to repay these costs no matter what the outcome of the case may be* * * *.

"* * * * *

"The following costs will be assessed for your court-appointed attorney fees:

"* * * * *

"[Counsel]—$475 on a Habeas Corpus proceeding * * *." (Footnote omitted; emphasis in original.)