Argued and submitted November 19, 2002, affirmed February 5, 2003

# CALVIN HASKINS,
*Appellant,*

*v.*

# Joan PALMATEER,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

## 00C-18300; A114264

63 P3d 31

R. Brooke Holstedt argued the cause and filed the brief for appellant.

Holly A. Vance, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Petitioner appeals from a judgment dismissing a writ of habeas corpus. ORS 34.310 - 34.730. The principal issue is whether petitioner was entitled to be discharged from parole in 1993 and, therefore, is being held unlawfully in custody. We review for errors of law, *Bedell v. Schiedler*, 307 Or 562, 564, 770 P2d 909 (1989), and affirm.

In 1983, petitioner was convicted of robbery in the first degree and assault in the first degree for offenses committed in 1982. He was sentenced to concurrent indeterminate sentences not to exceed 20 years. From September 1986 to May 1992, petitioner was released on parole with respect to those sentences; and subsequently his parole was revoked on three different occasions. In July 1992, petitioner was again released on parole. At that time, the Board of Parole and Post-Prison Supervision (board) set his tentative date for discharge from parole as July 1993. In 1997, the board again suspended and later revoked petitioner's parole. Between the time he had been released on parole in 1992 and the 1997 suspension, petitioner remained on parole. During that time, the board did not discharge petitioner from parole, nor did it extend his discharge date. When his parole was revoked in 1997, petitioner did not seek administrative or judicial review of the board's order.

In October 2000, petitioner petitioned for a writ of habeas corpus. The trial court issued the writ, and defendant superintendent filed a return. Petitioner then filed a replication that included an allegation that the board erred when it rescinded its restoration of good time credits that had been forfeited when he was found in violation of his parole. Defendant subsequently filed a motion to dismiss the writ, and petitioner filed an amended replication that alleged that he had been discharged from parole by operation of law in 1993. Petitioner reasoned that, because the board had not taken any action regarding his tentative release date by the time that date occurred, it had no authority to revoke his parole later. The amended replication contained no allegations relating to petitioner's good time credits. Defendant filed a supplemental motion to dismiss in response to petitioner's

allegations. Eventually, the trial court granted defendant's motion and entered a judgment of dismissal with prejudice, from which petitioner appeals.

On appeal, petitioner renews the arguments that he made before the trial court. First, he argues essentially that under *former* ORS 144.310 (1981), *repealed by* Or Laws 1993, ch 680, § 7,[1] and the board's rules, the board lost jurisdiction over him in July 1993, when his tentative discharge date occurred before the board took action to extend or renew his parole. Specifically, he states,

> "ORS 144.310(3) (1981) authorized the Board to 'extend or renew the period of active parole supervision or delay discharge . . . if it finds, in the manner provided in ORS 144.343, that the parolee has violated the conditions or terms of parole.' Similarly, OAR 255-90-015(1) (1982) authorized the board to 'extend a discharge date . . . if the Board finds, after a hearing pursuant to Division 75, that the parolee has violated the conditions of parole.
>
> "During the term of active parole supervision, from July 13, 1992, to July 12, 1993, (and at no point thereafter until July 10, 1997), the Board did not issue any orders pursuant to ORS 144.310(3) (1981) or OAR 255-90-015(1) (1982) 'extend[ing] or renew[ing] the period of active parole supervision or delay[ing] discharge.' In fact, the Board had no authority to issue any such orders because plaintiff did not violate the conditions or terms of parole during the period of active supervision. ORS 144.310(3) (1981) and OAR 255-90-015(1) (1982) provide the only authority upon which discharge from parole may be delayed. Since these provisions were inapplicable in the present case—because plaintiff had not violated parole—plaintiff was entitled to discharge from parole as a matter of law on July 12, 1993."

(Citations omitted; alterations in original; omissions in original.) Petitioner also argues on appeal that the board erred in rescinding the restoration of his good time credits.

■■ We first address petitioner's argument that he was entitled to release as a matter of law on his tentative parole discharge date in 1993 and, thus, that the board was without

---

[1] Because petitioner committed his crimes in 1982, the 1981 version of the statute is applicable to this case.

authority to revoke his parole in 1997. Habeas corpus is an appropriate remedy when a petitioner has "no other timely remedy available," and there is a "need for immediate judicial scrutiny" of the claim.[2] *Gage v. Maass*, 306 Or 196, 204, 759 P2d 1049 (1988). Here, petitioner failed to seek review of the board's 1997 revocation of his parole.[3] Nonetheless, he argues that he "could not have raised the [b]oard's 1993 failure to grant discharge from parole in an appeal of the November 28, 1997[,] revocation order. The 1997 revocation order had absolutely nothing to do with parole discharge." We disagree. The *action* of the board that caused petitioner's alleged unlawful imprisonment was the 1997 parole revocation.[4] If, as petitioner argues, the board had no authority to revoke his parole because he was entitled to discharge in 1993 when his tentative parole discharge date arrived, then that issue should have been raised in 1997 when the board issued its final order revoking parole. Nevertheless, even though petitioner had an adequate alternative remedy regarding the board's purported erroneous application of

---

[2] In *Adams v. Clements*, 183 Or App 207, 51 P3d 675 (2002), this court held that the petitioner was not entitled to seek habeas corpus relief because he had failed to seek judicial review of the board's order revoking his parole and because he was in custody on a separate charge and, thus, was not entitled to immediate release. While that case is distinguishable on its facts, our decision makes clear that the right to seek judicial review of the board's action regarding revocation of parole constitutes an adequate alternative remedy for purposes of habeas corpus relief. *Adams*, 183 Or App at 210.

[3] We note, as we did in *Adams*, 183 Or App at 209-10 n 1, that ORS 34.330(4), which prohibits a person who could have sought judicial review of a board order and failed to do so from prosecuting a writ of habeas corpus, is not applicable to this case. That provision was not enacted until 2001, *see* Or Laws 2001, ch 661, § 2, and petitioner in this case petitioned for habeas corpus relief before the effective date of the provision.

[4] During oral argument, counsel for petitioner questioned whether judicial review was available to petitioner in 1997 under the statutes in effect at that time. ORS 144.335(1) (1997) provided:

"When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole, the revoking of post-prison supervision or the imposition of conditions of parole or of post-prison supervision and after exhaustion of administrative review as provided by board rule, such person is entitled to judicial review of the final order."

Subsections (2) and (3) of the statute provided that certain final orders of the board, such as those relating to parole release dates and parole reconsideration hearing dates, were not subject to judicial review. Subsections (2) and (3) did not preclude judicial review of the revocation of petitioner's parole in this case.

governing statutes and rules, we address his first argument because it implicates the board's jurisdiction over him in 1993; without jurisdiction, its subsequent actions were legal nullities.

■■ We first turn to whether the applicable statute provided for discharge by operation of law when petitioner's tentative discharge date passed without any action by the board. We discern the meaning of the statute based on its plain text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). The board acquired jurisdiction over petitioner under ORS 144.050 (1981), which stated:

> "Subject to applicable laws, the State Board of Parole may authorize any inmate, who is committed to the legal and physical custody of the Corrections Division to go upon parole subject to being arrested and detained under written order of the board or as provided in ORS 144.350. The state board may establish rules and regulations applicable to parole."

Under ORS 144.040 (1981), the board was to adjudicate, in the event of an alleged violation of parole, whether the conditions of parole had been violated. Also, *former* ORS 144.310(1) (1981) stated:

> "When a paroled prisoner has performed the obligations of parole for such time as satisfies the State Board of Parole that the prisoner's final release is not incompatible with the prisoner's welfare and that of society, the board *may* make a final order of discharge and issue to the paroled prisoner a certificate of discharge; but no such order of discharge shall be made within a period of less than six months after the date of release on parole, except that when the period of the sentence imposed by the court expires at an earlier date, a final order of discharge shall be made and a certificate of discharge issued to the paroled prisoner not later than the date of expiration of the sentence."

(Emphasis added.) The minimum term of active parole supervision at the time was six months, and the board could also

> "require a more extended period of active supervision if, in a manner provided by rule, it [found] that a six-month

period of supervision [was] incompatible with the welfare of the parolee or of society."

*Former* ORS 144.310(2) (1981). Further, as noted by petitioner, the board could

"extend or renew the period of active parole supervision or delay discharge of a parolee if it [found], in the manner provided in ORS 144.343, that the parolee [had] violated the conditions or terms of parole."

*Former* ORS 144.310(3) (1981).

■ Plaintiff's argument is necessarily based on the premise that, if the board failed to follow the proper procedure in extending his term of parole, then his parole automatically terminated and the board was without further jurisdiction over him. We reject that premise. Completion of a prison term does not mean that the *sentence* of the court has been completed, and the outside boundary of the board's authority is based on the length of the sentence. *See Tucker v. Lampert*, 174 Or App 373, 377, 26 P3d 830 (2001), *rev'd in part on other grounds*, 333 Or 398, 42 P3d 1242 (2002). Parole is part of a convicted person's sentence served outside the prison walls. *Byrnes v. Board of Parole*, 134 Or App 296, 300, 894 P2d 1252 (1995). When *former* ORS 144.310(1) (1981) is read with *former* ORS 144.310(2) and (3) (1981), it is clear that the provisions *require* discharge only when a parolee's sentence expires.

Further, the board's authority to grant discharge from parole before the expiration of a paroled prisoner's sentence is discretionary under the above statutes. Under *former* ORS 144.310(1) (1981), the board "may" discharge a paroled prisoner before the expiration of the sentence. By its terms, the statute gives the board authority to release a parolee from parole supervision before the expiration of the sentence but does not require that the board do so. Rather, the statute limits the board's ability to discharge a person from parole to those situations where the board is satisfied, on the basis of the parolee's performance on parole, that the welfare of society and the parolee will be served. Petitioner's argument reads one portion of *former* ORS 144.310 (1981) in isolation from the other provisions of the same section. When read together, the terms of the statute set forth the minimum

requirements that must be met before a parolee may be discharged from parole and provide a procedural framework under which the board is to exercise its discretion. Nothing in the terms of the statute purports to deprive the board of jurisdiction over the parolee merely because the tentative discharge date arrives and passes without board action. Rather, the statute requires that the board must act affirmatively to discharge the parolee from parole by issuing a certificate of discharge. *Former* ORS 144.310(1) (1981). This court is not authorized to "insert what has been omitted" or "omit what has been inserted" from a statute. ORS 174.010. Thus, we decline to read into the above statutes a provision that automatically terminates parole and deprives the board of jurisdiction over a parolee where the board fails to act to extend the term of parole beyond the tentative parole discharge date.

■■■ Petitioner also bases his argument on the board's own rules. In interpreting administrative rules, we apply the same principles of interpretation that are used to construe statutes. *Columbia Steel Castings Co. v. City of Portland,* 314 Or 424, 430, 840 P2d 71 (1992). Thus, we first examine the text and context of the applicable rules. *PGE,* 317 Or at 610-11. The board's rules, as they existed in 1982 (the time of petitioner's crimes), establish procedures under which the board was to exercise its statutory authority. OAR 255-90-002(1) (1982) stated that the board would establish a discharge date for paroled prisoners.[5] Under OAR 255.90-003 (1982),

"(1)   The guidelines set forth in Exhibit H-1 shall govern the establishment of discharge dates. * * * For discharge to be effective, the parolee must display acceptable parole performance as indicated by Exhibit H-1 during the term of active parole supervision.

"(2)   During the pendency of any parole violation proceeding, the running of the parole period is stayed and the

---

[5] Specifically, OAR 255-90-002(1) (1982) provided:

"Pursuant to ORS 144.310 the Board shall establish a discharge date from active supervised parole. The period of supervised parole shall be as shown in the guideline matrix, Exhibit H-1, unless the Board provides written reasons for an extended supervision period. Extended supervision periods shall not exceed thirty six (36) months."

Board shall retain jurisdiction over the parolee until the proceedings are resolved."

Further, under OAR 255-90-005 (1982),

"When discharge is granted by the Board prior to the maximum expiration date of the paroled prisoner's sentence, the discharge shall not be considered effective until the certificate of discharge is received by the paroled prisoner."

OAR 255-90-010 (1982) set forth procedures that a parolee's supervising parole officer would take before the tentative discharge date. Included in the required actions was a recommendation by the officer either to allow the parolee to be discharged from parole or to deny discharge and, in the event of a denial, explain the reasons for denial.[6] Finally, OAR 255-90-015 (1982) provided:

"In addition to the power of the Board to revoke parole, it may extend a discharge date one time for six months without a hearing and thereafter up to a one year period if the Board finds, after a hearing pursuant to Division 75, that the parolee has violated the conditions of parole. (2) Nothing contained in this rule shall be interpreted to preclude more than one extension of a discharge date by the

[6] OAR 255-90-010 (1982) provided in full:

"(1) A minimum of 30 days prior to the discharge date on the Order of Parole, the supervising parole officer shall send to the Board a supervisory report. This report shall recommend one of two courses:

"(a) That the parolee be discharged.

"(b) That the discharge not be granted.

"(A) In this case, the supervisory report shall contain information showing why discharge is not warranted and recommend a new discharge date in accordance with OAR 255-90-015.

"(B) The case shall receive [sic] Board review.

"(C) After consideration of the parole officer's recommendation, the Board shall either discharge the parolee or issue a written explanation for denial of the request.

"(D) The supervising officer shall either notify the parolee of the new discharge date and reasons or notify the parolee in writing that he has been discharged.

"(2) If the Board desires further information on which to base its decision, it may conduct a hearing according to the procedures in Division 75.

"(3) Notwithstanding section (1) of this rule, the supervising officer may submit a recommendation with written reasons for early conditional discharge at any time after six months supervised parole."

Board. However, no extension of parole shall exceed the maximum term of sentence imposed by the Court."

Again, the question is whether the board lost jurisdiction over petitioner in 1993 by its alleged failure to follow its own rules. Under the above rules, it is clear that no discharge could occur by inaction or by operation of law; some action on the part of the board was required. Nothing in the rules provided for a discharge from parole merely because the board did not act in response to the tentative discharge date. Rather, the rules provided a procedure that included a recommendation from the supervising officer, board action regarding that recommendation, and the issuance of a certificate of discharge from the board. The principle that courts may not insert language into the text of a provision applies to the construction of administrative rules as well as to statutes. *City of Klamath Falls v. Environ. Quality Comm.*, 318 Or 532, 543, 870 P2d 825 (1994). Thus, we decline to read such a term into the board's rules. While the board may have failed to follow its own procedural rules in petitioner's case, that failure did not deprive the board of authority to revoke petitioner's parole; that authority continued in effect until the board acted. Nothing in the applicable rules or statutes affirmatively entitled petitioner to discharge from parole merely because of such a failure on the part of the board. We conclude that the board's jurisdiction over petitioner continued even if it failed to comply with its own rules. Accordingly, the trial court correctly dismissed the writ of habeas corpus regarding the allegation that he has been held unlawfully in custody since 1993.

■ ■ Petitioner also argues that the board wrongfully rescinded its restoration of his good time credits. As noted above, petitioner failed to plead that issue in his amended replication. Once the writ issued, the only pleadings were the return and the replication. *Gage*, 306 Or at 203. The amended replication operated to replace the original replication. ORCP 23 D. When a party makes a claim in an initial pleading and voluntarily omits that claim from his or her amended pleading, the original claim no longer exists because the amended pleading supersedes the original. *Propp v. Long*, 313 Or 218, 222-23, 831 P2d 685 (1992). Because petitioner did not include his claim relating to good

time credits in his amended replication, that claim was not properly before the trial court. Thus, the trial court also correctly dismissed the writ of habeas corpus on that ground.

Affirmed.