ALFONSO CAMPBELL,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
Department of Corrections,
Board of Parole and Post-Prison Supervision,
and Offender Information and Sentence Computation Unit,
*Defendants-Respondents.*

Multnomah County Circuit Court
101115816; A150123

297 P3d 489

William J. Macke argued the cause and filed the briefs for appellant.

Jennifer S. Lloyd, Attorney-in-Charge, Criminal Appeals, argued the cause for respondents. On the brief were John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

BREWER, J. pro tempore.

**BREWER, J. pro tempore**

Plaintiff, a former inmate who was incarcerated in the custody of the Oregon Department of Corrections (DOC), appeals from a judgment dismissing this negligence action in which he sought damages against defendants[1] for what he asserted was a two-year period of unlawful imprisonment after his sentences for various criminal offenses should have been discharged. The trial court dismissed the action after granting defendants' motion for a directed verdict on the ground that plaintiff failed to adduce evidence that he had been unlawfully imprisoned. We affirm.

When we review a grant of a directed verdict, we view the facts in the light most favorable to the party opposing that motion—in this case, plaintiff. *See Boothby v. D.R. Johnson Lumber Co.*, 341 Or 35, 38, 137 P3d 699 (2006) (using that standard). The facts, which we recount without unnecessary detail, are essentially undisputed. On November 8, 1983, plaintiff was sentenced to a 20-year indeterminate sentence for first-degree burglary. After serving a two-year prison term, plaintiff was paroled for that offense on November 10, 1985. Plaintiff thereafter violated his parole, which was revoked on March 3, 1986. Plaintiff received an eight-month imprisonment sanction for the parole violation, and the Board of Parole and Post-Prison Supervision (the board) set a release date of October 9, 1986.

On August 8, 1986, plaintiff was convicted of first-degree kidnapping and sentenced to an eight-year indeterminate sentence consecutive to the burglary sentence. The board established a 52-month prison term for the kidnapping conviction. On February 8, 1991, plaintiff was paroled again. On October 17, 1991, the board imposed a 180-day prison sanction after plaintiff committed a parole violation. That sanction commenced on the date of plaintiff's arrest for the parole violation, August 17, 1991, and it ended on February 12, 1992, when plaintiff was once again paroled.

Meanwhile, however, on February 7, 1992, plaintiff was convicted of first-degree robbery and was sentenced to

---

[1] Defendants are DOC and the Board of Parole and Post-Prison Supervision.

180 months' imprisonment under the sentencing guidelines, to be served consecutively to his previously imposed indeterminate sentences. Plaintiff successfully appealed that sentence and, on remand, he was resentenced on May 14, 1993, to a 130-month term of imprisonment that the court imposed concurrently with his previously imposed indeterminate sentences. Although plaintiff does not address these facts in his brief on appeal, the record indicates that he also had consecutive guidelines sentences on convictions for second-degree assault and supplying contraband. Plaintiff subsequently was paroled on his indeterminate kidnapping sentence (and placed on post-prison supervision for his guidelines offenses) in June 2005.

On November 21, 2007, the board sentenced plaintiff to a 24-month prison term for violating the conditions of his parole. Plaintiff was once again released on parole on November 20, 2009. The board discharged plaintiff's kidnapping sentence on January 15, 2011.

In this action, plaintiff alleged that defendants negligently calculated his two consecutive indeterminate sentences (burglary and kidnapping) and that, as a result, plaintiff served an unlawful prison term when the board sanctioned him for a parole violation in 2007. If the board had properly calculated those sentences, plaintiff asserts, it would have ascertained that they had been discharged before he was released from prison in June 2005. It follows, plaintiff reasons, that the board unlawfully treated him as a parolee on his release from prison in 2005 and lacked jurisdiction to sanction him for a later violation of parole. Plaintiff asserted that he had been damaged by reason of that unlawful imprisonment.

At trial, plaintiff elaborated the following two-pronged theory of defendants' negligence. First, according to plaintiff, DOC failed to adjust his kidnapping sentence "to account for the 58 months plaintiff served on that sentence between 1986 and 1993." According to plaintiff, DOC breached its duty to him by failing to adjust his maximum sentence date on the kidnapping conviction to reflect that combined 58-month period of imprisonment. Plaintiff relies on a "February 20, 2004 DOC face sheet

showing a 'termination date' on the Burglary-I sentence of '11/05/2003' and a 'MAX sentence date' on the Kidnapping-I of '10/26/2011.'" Instead, plaintiff asserts, "[t]his facesheet should have reflected the 58 months plaintiff had already served on the Kidnapping-I sentence, which would have resulted in a 'MAX sentence date' no later than January 5, 2007—more than 11 months prior to his incarceration for a parole violation on that sentence."

In the second prong of his theory, plaintiff asserts that, throughout his 130-month prison term on the conviction for first-degree robbery, he was entitled to accrue "good-time credits" on his previously imposed concurrent indeterminate sentences for first-degree burglary and first-degree kidnapping. If he had received those credits, plaintiff argues, those indeterminate sentences would have been discharged before he was released from prison in June 2005. Plaintiff notes that the total term of his sentence for robbery was 4,865 days. From that starting point, he explains:

"As of October 17, 1991, the Board had calculated an expiration date of plaintiff's indeterminate sentences of June 8, 2011 (as argued above, plaintiff disputes the accuracy of this calculation). From February 7, 1992, this computes to a duration of 7,061 days, which would establish a good-time date at 4,707 days, or December 27, 2004. From May 14, 1993, this computes to a duration of 6,599 days, which would establish a goodtime date at 4,399 days, or May 30, 2005. Plaintiff did not forfeit any good time during this period, and would have reached both of those dates prior to his release on June 2, 2005, which should have resulted in a discharge of those sentences."

Plaintiff observes that, throughout an inmate's prison term, the board is required to update the inmate's good-time date to reflect credits or deductions that the inmate accumulates under an indeterminate sentence. *See Erbs v. Board of Parole*, 90 Or App 253, 255, 752 P2d 318 (1988) (describing good-time calculation process). Plaintiff asserts that, when he was resentenced on the robbery conviction in 1993 and that sentence was imposed concurrently with his prior sentences, defendants "should have recalculated his good-time date so as to shorten his indeterminate sentences." Plaintiff concludes:

"By any reasoned calculation, Plaintiff reached the good-time date that the Board should have established on the indeterminate sentences and those sentences should have been discharged at that time. The Board and DOC breached their duty to plaintiff to correctly compute and administer his sentences by failing to adjust his good-time date and timely discharge his Kidnapping-I and Burglary-I sentences."

In order to properly analyze plaintiff's claim, it is necessary to briefly descend into the labyrinth of the history of the Oregon sentencing system. The legislature adopted the indeterminate sentencing scheme informally known as the matrix system in 1977, and that scheme remained in effect until the guidelines system went into effect on November 1, 1989. Under the matrix system, a sentencing court sentenced an offender to an indeterminate term within the maximum sentence allowable under ORS 161.605 for the offense of conviction. The prison term was established by the board under rules adopted for that purpose. ORS 144.120. The board set an initial parole release date within a matrix range for the offense or offenses of conviction. ORS 144.120(2); ORS 144.780. Although the offender's initial prison term as established by the board under the matrix ended with his release on parole, the offender had not yet fully served his sentence. *Haskins v. Palmateer*, 186 Or App 159, 165, 63 P3d 31, *rev den*, 335 Or 510 (2003). The board's authority over the offender extended until the end of the indeterminate sentence imposed by the court. *Former* ORS 144.310 (1987), *repealed by* Or Laws 1993, ch 680, § 7. Alternatively, the board could, but did not need to, discharge an offender before the end of the judicially imposed sentence. *Former* ORS 144.310; *Haskins*, 186 Or App at 165-66.

In 1989, the legislature overhauled the state's sentencing law and adopted what are known as the "sentencing guidelines." In brief, the new legislation provided that, for felonies committed on or after November 1, 1989, trial courts must impose a "presumptive sentence" determined by reference to the rules of the Oregon Criminal Justice Commission, unless the courts make certain findings that would justify a departure from the presumptive

sentence. Or Laws 1989, ch 790; *see generally State v. Davis*, 315 Or 484, 486-89, 847 P2d 834 (1993) (summarizing sentencing guidelines legislation). Because defendant committed his robbery offense after November 1, 1989, that offense, unlike his earlier offenses, was sentenced under the guidelines scheme.

With respect to plaintiff's prior indeterminate sentences, ORS 421.120 established a formula by which DOC may reduce an inmate's indeterminate sentence if the prisoner "faithfully has observed the rules of the institution." ORS 421.120(2). The reduction is known as "good time." ORS 421.120 provides, in part:

"(2) Each inmate confined in execution of the judgment of sentence upon any conviction in the Department of Corrections institution, for any term other than life, and whose record of conduct shows that the inmate faithfully has observed the rules of the institution, shall be entitled to a deduction from the term of sentence to be computed as follows:

"* * * * *

"(b) From the term of a sentence of more than one year, one day shall be deducted for every two days of the sentence actually served in the Department of Corrections institution.

"* * * * *

"(5) When a paroled inmate violates any condition of parole, no deduction from the term of sentence, as provided in subsection (2) of this section, shall be made for service by the inmate in the Department of Corrections institution prior to acceptance and release on parole, except when authorized by the State Board of Parole and Post-Prison Supervision upon recommendation of the superintendent thereof."

Generally, the sentence of an inmate who qualifies for good-time credit is adjusted by deducting a certain number of days from the sentence imposed by the sentencing court. *Id.*; *see also Neal v. Maass*, 94 Or App 119, 121, 764 P2d 947 (1988), *rev den*, 307 Or 405 (1989). At the beginning of an inmate's term of imprisonment, DOC calculates the anticipated "good time" that the inmate would receive without any forfeitures

and projects the expected ending date of the reduced term of imprisonment. By rule, OAR 291-100-040, DOC is to certify the amount of good time actually credited to the inmate. *Erbs*, 90 Or App at 255.

In *Erbs*, we held that, once an inmate's indeterminate sentence expires, the inmate is discharged from the jurisdiction of DOC, and the board is thereafter without authority to impose conditions of parole. *Id.* If a person remains incarcerated when the good-time release date arrives, he or she is entitled to unconditional release, without a period of supervised parole. *Id.* However, good time must be earned while an inmate is confined on the subject offense. *Ventris v. Maass*, 99 Or App 85, 87-88, 781 P2d 1224 (1989), *rev den*, 309 Or 231 (1990). A person on parole is not confined on his or her subject conviction, and is not serving a sentence on that conviction in an institution. *Id.* at 88. "Therefore, when an inmate is released on parole, the accumulation of good time stops and the previously calculated good time release date is suspended." *Id.*

In *Ventris*, we distinguished *Erbs*:

"This case is distinguishable from [*Erbs*], where the Board attempted to parole an inmate *on*, rather than before, his good time release date. We held that a confined inmate's term of sentence expires on his good time release date and that on that date he was discharged from the jurisdiction of the Department of Corrections and was not subject to parole. Here, in contrast, plaintiff's term of sentence did not expire on his originally projected good time release date. That date was calculated on the projected time to be served in the penitentiary. *When he was released on parole, he stopped receiving credit for good time* and never accumulated sufficient credit to reach the projected good time release date. The Board, therefore, did not lose jurisdiction over plaintiff when the projected date arrived. The effect of the parole was to suspend plaintiff's good time release date and to leave him without one, unless and until one was recomputed for him if his parole was unsuccessful and he returned to the penitentiary."

*Ventris*, 99 Or App at 88 (first emphasis in the original; second emphasis added).

With that background, we return to the problem at hand. Plaintiff's burglary and kidnapping sentences required him to serve combined consecutive sentences of 28 years—or roughly from 1983 to 2011. As noted, petitioner was paroled a final time in 2009, and the issuance of a certificate of discharge on January 15, 2011, ended petitioner's service of his sentence on parole. ORS 144.310 (1985), which was in effect at the time petitioner committed his kidnapping crime, provided that the board could issue a "certificate of discharge" "[w]hen a paroled prisoner has performed the obligations of parole for such time as satisfies the [board] that the prisoner's final release is not incompatible with the prisoner's welfare and that of society." Here, the board issued a certificate of discharge on plaintiff's sentence on January 19, 2011. Thus, on issuance of that certificate, plaintiff no longer remained on parole supervision, and his 28-year sentences functionally expired.

With that understanding of plaintiff's sentences, it is apparent that defendants did not negligently fail to account for the combined 58-month prison term that plaintiff served on his kidnapping sentence between 1986 and 1993. Plaintiff's theory rests on the mistaken premise that a prison term is identical to a "sentence." It is not. ORS 144.120 (1985), which was in effect at the time plaintiff committed the crime of kidnapping, provided, in part:

"(1)  Within six months of the admission of a prisoner to any state penal or correctional institution, the board shall conduct a parole hearing to interview the prisoner and set the initial release date on parole pursuant to subsection (2) of this section.

"(2)  In setting the initial parole release date for a prisoner pursuant to subsection (1) of this section, the board shall apply the appropriate range established pursuant to ORS 144.780. * * *"

ORS 144.780(1) (1985), in turn, authorized the board to establish, by rule, "ranges of duration for imprisonment to be served for felony offenses prior to release on parole." In short, the "prison terms" established by the board to be served before plaintiff became eligible for parole did not reduce the "sentences" that he was serving; rather they

had to do with when he would be eligible for parole. Stated differently, although plaintiff's various prison terms were determinative of when he would be released on parole, they did not alter the length of his sentences. *Haskins*, 186 Or App at 165.

Plaintiff is not correct that he served 58 months on his kidnapping sentence between 1986 and 1993. Although the *prison term* for that offense was set in 1986 and served as the basis for determining his eligibility for parole release, his eight-year indeterminate *sentence* on that offense was to be served consecutively to his sentence for burglary. At the time he was paroled on both of those offenses, he had served only a part of the indeterminate burglary sentence. The kidnapping sentence necessarily was served after the burglary sentence, not at the same time. Were plaintiff correct, then he would have been serving the 58 months in question on both his burglary *and* his kidnapping sentences—in effect, making them partially concurrent rather than consecutive.

As for plaintiff's remaining argument, we understand him to assert that he was entitled to receive "good-time" credit on a portion of his indeterminate sentences that ultimately was served, in part, concurrently with the guidelines robbery sentence. He argues that our decision in *Shelby v. Board of Parole*, 244 Or App 348, 260 P3d 682, *rev den*, 351 Or 507 (2011), supports his position; the board argues in response that *Shelby* supports its position. We need not address whether or how *Shelby* might apply to the issue as framed by plaintiff because the straightforward answer is that, even assuming that the board should have credited him with good time during the concurrent sentence, his arguments are based on the assumption that he was entitled to accrue good time not only while he served the robbery sentence, but while he served the other, consecutive guidelines sentences. What he fails to acknowledge is that, during some of his subsequent prison time, he was serving additional *consecutive* guidelines sentences for other crimes. Thus, even if we were to conclude that plaintiff were correct that, under *Shelby*, he was entitled to "good time" for certain dates, we would not agree with his ultimate conclusion that he would have reached his "good-time" date before he was

paroled, because plaintiff clearly was not entitled to accrue good-time credits on an indeterminate sentence while he was serving other *consecutive* guidelines sentences. *See Shelby*, 244 Or App at 353-54 (petitioner was not incarcerated on his indeterminate sentences while he served his consecutive guidelines sentences).

Because neither of plaintiff's theories of unlawful imprisonment is sound, the trial court did not err in granting defendants' motion for a directed verdict.[2]

Affirmed.

---

[2] We reject plaintiff's remaining assignments of error without discussion.