Argued and submitted September 19, 2007, appeal dismissed July 23, 2008

## RALPH JAMES HOUSTON,
*Plaintiff-Appellant,*

*v.*

## Chris BROWN,
Sheriff of Douglas County;
Department of Corrections
and Board of Parole and Post-prison Supervision,
*Defendants-Respondents.*

Douglas County Circuit Court
05CV2681CC; A129815

190 P3d 427

Charles F. Lee argued the cause for appellant. With him on the briefs was Lee & Kaser, P.C.

Christina M. Hutchins, Assistant Attorney General, argued the cause for respondents Oregon Department of Corrections and Board of Parole and Post-Prison Supervision. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Carolyn Miller waived appearance for respondent Chris Brown.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

Wollheim, J., dissenting.

## EDMONDS, P. J.

Plaintiff appeals from a judgment dismissing his petition for a writ of habeas corpus pursuant to ORS 34.310 to 34.730. We dismiss plaintiff's appeal as moot.

Plaintiff alleges that "[t]he imprisonment and restraint of plaintiff are illegal because plaintiff has already been incarcerated for 990 days as sanctions for violations of post-prison supervision on the convictions resulting from Douglas County Circuit Court cases[.]" Plaintiff further alleges that the incarcerations that result from sanctions imposed by his post-prison supervision officer for failure to comply with his conditions of supervision exceed those authorized by law. The trial court ruled that habeas corpus relief was not available to plaintiff on jurisdictional grounds and, in the alternative, that the limitation of 180 days of incarceration provided for in the administrative rule adopted pursuant to ORS 144.108 applies only to post-prison supervision revocation proceedings and not to administrative sanctions imposed under ORS 144.106.[1]

While the appeal was pending, defendants moved to dismiss it as moot on the ground that the particular administrative sanction that prompted plaintiff's petition has now been served and he is no longer in custody pursuant to that sanction. The Chief Judge of this court denied the motion on the ground that "[i]t appears that the issue in this case goes beyond a challenge to a particular sanction." After it was argued on the merits, the case was taken under advisement. As part of our consideration, we again address the issue of mootness because that issue is jurisdictional in nature. *See Hood River County v. Stevenson*, 177 Or App 78, 81, 33 P3d 325 (2001) (jurisdictional issues need not be raised by the parties, as the court has the obligation to consider them *sua sponte*).

In general, "[d]etermining mootness is one part of the broader question of whether a justiciable controversy exists." *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993).

---

[1] *See* OAR 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(3).

One requirement for the existence of a justiciable controversy is that the court's decision in the matter will have some practical effect on the rights of the parties to the controversy. Thus, for example, in *Barnes v. Thompson*, 159 Or App 383, 977 P2d 431, *rev den*, 329 Or 447 (1999), we dismissed an appeal as moot where the plaintiff petitioned for habeas corpus relief alleging that the extension of his parole release date was unlawful after he was released from parole during the pendency of the appeal. We reasoned that, because the plaintiff was no longer incarcerated, no justiciable controversy existed and dismissal of his appeal was required. *Id.* at 386-87.

There is an exception to the general rule. If collateral consequences from a trial court's judgment or an administrative tribunal's order continue to adversely affect a party at the time of appeal, a justiciable controversy may still exist. *Brumnett*, 315 Or at 405. An implicit predicate, however, to the application of the "collateral consequences" exception is that the gravamen of the underlying action that results in the judgment or order on appeal must be the source of the collateral consequences.

In this case, as in *Barnes*, the 90-day jail sanction that is the basis for plaintiff's habeas corpus action expired during the pendency of this appeal, and, as far as the record shows, plaintiff is no longer incarcerated. Nonetheless, plaintiff reasons that collateral consequences exist because he challenges in his habeas petition the state's authority to continue to sanction him for violations in light of his continued refusal to comply with the conditions of his post-prison supervision.[2] In plaintiff's view, he has already served the maximum sanctions that could be legally imposed, and, therefore, his claim in habeas is available to prevent any future sanctions. The flaw in plaintiff's argument is that any potential jail sanction in the future is not a collateral consequence of his past jail sanctions.[3] Rather, it would be a result of his

---

[2] One of petitioner's conditions of post-prison supervision is that he undergo sex offender treatment. A predicate to that treatment is that petitioner must admit that he is a sex offender. In the past, petitioner has consistently refused to make that admission for purposes of treatment, thus resulting in the imposition of multiple sanctions.

[3] The dissent's analysis suffers from the same flaw.

ongoing failure to abide by the terms of his post-prison supervision. Habeas corpus is not a remedy that is available to relieve a plaintiff from the terms of his post-prison supervision.

In general, "[e]very person imprisoned or otherwise restrained of liberty, within this state, except in the cases specified in ORS 34.330, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom." ORS 34.310.[4] The statute further provides that every other form "of habeas corpus is abolished."[5] ORS 34.590 provides that "[i]f no legal cause is shown for the imprisonment or restraint, or for the continuation thereof, the court or judge shall discharge such party from the custody or restraint under which the person is held." Thus, under ORS 34.310 to 34.730, when a plaintiff challenges the basis of his incarceration, no other relief is available to a plaintiff who prevails on a habeas corpus claim other than to be released from custody.

It follows from the above understanding that any relief that the trial court could grant under ORS 34.590 would have no practical effect. That is because the habeas statutes do not grant authority to courts to order the Board of Parole and Post-Prison Supervision to desist in the future from imposing sanctions against persons subject to the rules of post-prison supervision. The dissent disagrees, arguing that "there is substantially more than a 'mere possibility' that petitioner will again be confined for violating the same condition of post-prison supervision * * *." 221 Or App at 214. The flaw in the dissent's reasoning is that it would afford

---

[4] ORS 34.330(4) provides that a person may not prosecute a writ of habeas corpus if the "person is eligible to seek judicial review of a final order of the State Board of Parole and Post-Prison Supervision under ORS 144.335 but the person fails to seek judicial review of the order in a timely manner." The record in this case does not indicate whether the board ever issued an order relating to petitioner's sanctions within the meaning of ORS 34.330(4).

[5] Habeas corpus relief is also available to challenge the legality of additional measures of imprisonment or restraint beyond the fact of the prisoner's custodial status. *Penrod/Brown v. Cupp*, 283 Or 21, 28, 581 P2d 934 (1978). An example of such a measure would be the custodian's failure to furnish reasonable medical care to a prisoner. Plaintiff does not make a "conditions of imprisonment" claim in this case. His only claim is that defendants cannot lawfully continue to sanction him with 90-day periods of imprisonment for his refusal to comply with the conditions of his post-prison supervision.

relief under the habeas statutes that is beyond the scope of the relief authorized by the legislature in those statutes. It necessarily follows that plaintiff's appeal must be dismissed because this court's decision could have no practical effect on any potential sanctions imposed by the board in the future.[6]

Appeal dismissed.

**WOLLHEIM, J.,** dissenting.

The majority opinion dismisses this case as moot. For the reasons that follow, I respectfully disagree and would affirm the trial court.

In *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993), the Supreme Court stated that "[d]etermining mootness is one part of the broader question of whether a justiciable controversy exist[s.]" In order for a matter to be a justiciable controversy, a decision in the matter has to "have some practical effect on the rights of the parties to the controversy." *Id.*; *see also Corey v. DLCD*, 344 Or 457, 464, 184 P3d 1109 (2008) ("If it becomes clear in the course of a judicial proceeding that resolving the merits of a claim will have no practical effect on the rights of the parties, this court will dismiss the claim as moot." (Citing *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004))). One such practical effect is described by the "collateral consequences" doctrine. *Brumnett*, 315 Or at 405.

The majority acknowledges the existence of the "collateral consequences" doctrine, but nonetheless asserts that the application of "collateral consequences" necessitates the "implicit predicate" that "the gravamen of the underlying action that results in the judgment or order on appeal must be the source of the collateral consequences" to the plaintiff. 221 Or App at 211.

In *Brumnett*, the court concluded that the "mere possibility" that the state might seek future recompense for the cost of the petitioner's care was insufficient to establish a cognizable collateral consequence of the petitioner's alleged

---

[6] If plaintiff's argument is correct, that the board lacks the authority to continue to sanction him with periods of imprisonment, his remedy may be under the Uniform Declaratory Judgments Act, ORS 28.010 to 28.160 (providing authority to trial courts to declare the legal rights, status, or relationships of persons and enter declaratory judgments and injunctions in conformance therewith).

improper confinement in the Oregon State Hospital. 315 Or at 407. In contrast, in this case, there is substantially more than "a mere possibility" that petitioner will again be confined for violating the same condition of post-prison supervision (PPS). Plaintiff has been dismissed from his assigned sex offender treatment program on at least 11 occasions, resulting in continued confinement in the county jail. This revolving door of plaintiff's dismissal from treatment, his confinement in jail, and his release from jail with an order to return to the sex offender treatment program—all three of which occur in almost immediate temporal proximity—has resulted in approximately 990 days of confinement. Those facts, taken as a whole, provide more than "a mere possibility" of consequences and sufficiently establish a cognizable collateral consequence.

Because I would conclude that this appeal is not moot, I would address both the jurisdictional arguments and the merits of this case. The parties dispute the basis upon which the trial court ruled. Plaintiff asserts that the trial court dismissed the writ on the merits. Defendants assert that the trial court dismissed the writ for lack of jurisdiction and, in the alternative, on the merits. Because jurisdiction can be raised at any time, I first consider defendants' jurisdictional arguments. *See Just v. City of Lebanon*, 193 Or App 132, 143 n 7, 88 P3d 312 (2004), *rev dismissed*, 342 Or 117 (2006) (jurisdiction is a threshold matter that may be raised for the first time on judicial review or raised by this court on its own motion).

Defendants argue that *Alexander v. Gower*, 200 Or App 22, 113 P3d 917 (2005), *rev den*, 340 Or 34 (2006), controls the jurisdictional question. In *Alexander*, the plaintiff argued that he was entitled to release from prison because he had served beyond his "good time" date. We concluded that the plaintiff's writ of habeas corpus was barred by operation of law because the plaintiff was eligible to seek judicial review of a final order of the board, pursuant to ORS 144.335, but he failed to do so. *Id.* at 28. Defendants contend that this case presents the same situation as in *Alexander*. In addition,

defendants rely on ORS 34.330(4),[1] and argue that the trial court here correctly concluded that it lacked jurisdiction over plaintiff's claims because he could have sought judicial review of the board's final order imposing the relevant condition of PPS but did not do so.

Plaintiff responds that, contrary to defendants' assumption regarding a final board order, there is no final board order from which plaintiff could seek judicial review. As a result, plaintiff argues, habeas corpus is the only appropriate remedy and the trial court has jurisdiction.

I agree with plaintiff. There is no evidence in the record that the board issued a final order relevant to the current dispute of which plaintiff could have sought judicial review. In fact, the record does not contain a single board order sanctioning plaintiff for violating a condition of PPS. The record regarding plaintiff's confinement in the county jail consists of only two documents: (1) the detention warrant authorizing plaintiff's arrest and (2) an e-mail from the board to the sheriff authorizing plaintiff's *release* from the county jail.

Plaintiff cannot comply with ORS 144.335 because there is no relevant final board order that plaintiff could challenge. Without a final order from the board, plaintiff could not request judicial review. Therefore, a writ of habeas corpus is an appropriate method to challenge plaintiff's confinement in the Douglas County Jail. Accordingly, the trial court had jurisdiction and this court has jurisdiction.

Defendants also argued below, and the majority agrees, that plaintiff could seek declaratory or injunctive relief in lieu of a writ of habeas corpus. 221 Or App at 213 n 6. However, given that plaintiff's claimed injury is his fundamental liberty interest, neither declaratory nor injunctive relief is an adequate remedy. *See Barrett v. Belleque,* 344 Or

---

[1] ORS 34.330 provides, in part:

"A person may not prosecute a writ of habeas corpus if:

"* * * * *

"(4) The person is eligible to seek judicial review of a final order of the State Board of Parole and Post-Prison Supervision under ORS 144.335 but the person fails to seek judicial review of the order in a timely manner."

91, 102-03, 176 P3d 1272 (2008) (even if an alternative remedy is available, the writ of habeas corpus provides a speedy remedy and few other legal remedies provide such swift relief); *Haskins v. Palmateer*, 186 Or App 159, 163, 63 P3d 31, *rev den*, 335 Or 510 (2003) ("Habeas corpus is an appropriate remedy when a petitioner has 'no other timely remedy available,' and there is a 'need for immediate judicial scrutiny' of the claim."). Additionally, the trial court did not decide this case on that ground.

Before turning to the merits, I pause briefly to review the relevant statutes and administrative rule. In 1987, the Legislative Assembly directed the Oregon Criminal Justice Council to develop felony sentencing guidelines.[2] Oregon Criminal Justice Council, *Oregon Sentencing Guidelines Implementation Manual*, 1 (1989). The sentencing guidelines took effect on November 1, 1989, and apply to any felony crime committed on or after that date. *See* Or Laws 1989, ch 790, § 6. Under the sentencing guidelines, a felony sentence consists of two parts: (1) a determinate term of incarceration (or, in certain circumstances, probation) and (2) for sentences consisting of incarceration, a determinate term of PPS. *See* ORS 137.010(10) (1989). Although created by the Oregon Criminal Justice Commission as administrative rules, those rules have the authority of statutes because they were approved by the legislature. *State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000).

In carrying out its responsibilities, the Oregon Criminal Justice Council adopted *former* OAR 253-11-004 (1992), *renumbered as* OAR 213-011-0004 (1996), concerning violation of conditions of post-prison supervision.[3] That rule, which applies to plaintiff because he committed his crimes while the rule was in effect, provided:

---

[2] In 1995, the legislature reorganized the administrative agencies charged with implementing the criminal sentencing system. The legislature consolidated the Oregon Criminal Justice Council with the State Sentencing Guidelines Board to form the current Oregon Criminal Justice Commission. For the purposes of this opinion, the reorganization and change in agency names do not affect our analysis.

[3] For the purposes of this opinion, all references to OAR 253-11-004 refer to the 1992 version of that rule.

"(1) The Department or its designee shall use a continuum of administrative sanctions for violation of the conditions of post-prison supervision. The sanction continuum shall include: adjustments to the level of supervision, modification of or addition to the conditions of community supervision as approved by the Board, and any other appropriate available local sanction.

"(2) If the Department or its designee finds that local sanctions are insufficient punishment for any violation of the conditions of post-prison supervision, it may request the Board to return the offender to a state correctional facility.

"(3) If requested to return an offender to a state correctional facility, the Board shall hold a hearing to determine whether prison incarceration is appropriate and may impose an appropriate term of incarceration up to ninety (90) days for a technical violation and up to one hundred and eighty (180) days for conduct constituting a crime. Except as provided in OAR 253-05-004(2) [for aggravated murder], during the full term of post-prison supervision, an offender may not be required to serve more than one hundred and eighty (180) days of incarceration for violations of the conditions of supervision.

"(4) An offender ordered to serve a term of prison incarceration as a sanction for a post-prison supervision violation is not eligible for earned-credit time or transitional leave.

"(5) An offender ordered to serve a term of prison incarceration as a sanction for a post-prison supervision violation shall receive credit for time served in a state or local correctional facility on the supervisory violation prior to the Board's imposition of a prison term sanction."

In 1989, as part of the legislative overhaul of Oregon's criminal sentencing system, the legislature enacted ORS 144.106 and ORS 144.108 regarding PPS violations. ORS 144.106 (1989) provided:

"Except as otherwise provided by rules of the Department of Corrections concerning parole and post-prison supervision violators, the supervisory authority shall use a continuum of administrative sanctions for violations of the

conditions of post-prison supervision. The sanction continuum shall include adjustments to the level of supervision, modification of or additions to the conditions of supervision, as approved by the State Board of Parole and Post-Prison Supervision, and *any other appropriate available local sanctions*."

(Emphasis added.) ORS 144.108 (1989)[4] provided, in part:

"(1)   If the violation of post-prison supervision is new criminal activity or if the supervisory authority finds that local sanctions are insufficient punishment for a violation of the conditions of post-prison supervision, the supervisory authority may request the State Board of Parole and Post-Prison Supervision to return the released person to a state correctional facility.

"(2)   If so requested, the board or its designated representative shall hold a hearing to determine whether imprisonment is appropriate. Except as otherwise provided by rules of the Department of Corrections concerning parole and post-prison supervision violators, the board may impose a term of imprisonment up to the maximum provided by rules of the State Sentencing Guidelines Board * * *.

"(3)   A person who is ordered to serve a term of imprisonment as a sanction for a post-prison supervision violation is not eligible for:

"(a)   Earned credit time as defined in ORS 421.121;

"(b)   Transitional leave as defined in ORS 421.168; or

"(c)   Temporary leave as defined in ORS 421.165.

"(4)   A person who is ordered to serve a term of imprisonment as a sanction for a post-prison supervision violation shall receive credit for time served in a state or local correctional facility on the post-prison supervision violation prior to the board's imposition of a term of imprisonment."

In 1991, the legislature revised ORS 144.106 to provide:

---

[4] Since its enactment in 1989, ORS 144.108 has been amended several times *See* Or Laws 1995, ch 423, § 17; Or Laws 1997, ch 313, § 13; Or Laws 1997, ch 525, § 5. For the purposes of this opinion, we refer to the 1989 version of the statute.

"(1) Except as otherwise provided by rules of the Department of Corrections and the State Board of Parole and Post-Prison Supervision concerning parole and post-prison supervision violators, the supervisory authority shall use a continuum of administrative sanctions for violations of the conditions of post-prison supervision.

"(2) The sanction continuum shall include adjustments to the level of supervision and, as approved by the State Board of Parole and Post-Prison Supervision:

"(a) Modification of or additions to the conditions of supervision; and

"(b) Any other appropriate available local sanctions including, but not limited to, community service work, house arrest, electronic surveillance, restitution centers, work release centers, day centers or other local sanctions established by agreement with the supervisory authority.

"(3) *If the local sanction requires confinement for more than 15 days in a restitution center, work release center or jail,* the board or its designated representative shall hold a hearing * * *."

(Emphasis added.) *See* Or Laws 1991, ch 836, § 1.[5]

Turning to the merits, at the evidentiary hearing on the writ, the court identified three issues.[6] The "main issue," according to the court, involved the applicable statutes and administrative rules. In its oral findings, the trial court concluded that, under the relevant statutory and administrative framework, plaintiff could receive local administrative sanctions of time in the county jail, up to 90 days at a time, until the expiration of his PPS term in 2019.

"[TRIAL COURT]: I see rules existing for administrative sanctions[;] I see rules existing for revocation, and the bad news for [plaintiff] is that he can be sanctioned until 2018, [*sic*] ninety days at a time, on this sex offender thing."

---

[5] Unless otherwise noted, all references to ORS 144.106 refer to the 1991 version of the statute. Since 1991, ORS 144.106 has been amended once. *See* Or Laws 1997, ch 525, § 4.

[6] The court described two issues as plaintiff's constitutional challenges and concluded that those arguments did not fall under habeas jurisdiction. Plaintiff does not challenge the trial court's conclusions regarding those challenges.

Later, the court reiterated its conclusion:

> "[TRIAL COURT]: So I want to hit one last time the really main issue, and that is the distinction between the twelve month maximum, which I think in [plaintiff]'s case is really a hundred and eighty day max, maximum,[7] and I think we all agree with that in Division 11, and whether that maximum applies or is just applicable to revocations. *I hold as a matter of law that it's applicable only to revocations and not to administrative sanctions under Division 58.*"[8]

(Emphasis added.)

Plaintiff argues that, pursuant to OAR 253-11-004, he "ha[s] already served the maximum amount of incarceration available to sanction post prison violations for the offenses of which he had been convicted[,]" and as a result, defendants no longer have the authority to sanction him with jail time. In support of his argument, plaintiff relies on OAR 253-11-004(3), specifically, the provision that states, *"during the full term of post-prison supervision, an offender may not be required to serve more than one hundred and eighty (180) days of incarceration for violations of the conditions of supervision."* (Emphasis added.) Plaintiff continues that, while the board cannot use jail time as a sanction, the board "still [has] the authority to invoke other sanctions against [plaintiff] * * *." Plaintiff concludes that, because he served more than 180 days of incarceration for violations of the conditions of supervision, the board lacks legal authority to confine him in jail.

Defendants assert that plaintiff misreads OAR 253-11-004 and that the applicable statutes and rules distinguish

---

[7] OAR 253-011-004, which was in effect from September 1, 1989 until September 14, 1993, provided in part that the maximum term of prison incarceration when an offender was returned to a state correctional facility for a PPS sanction was 90 days for a technical violation and up to 180 days for conduct constituting a crime. OAR 253-011-004(3) (1992). That rule was amended in 1993 to allow up to a maximum of 12 months' incarceration. Plaintiff committed his crimes of conviction in 1992; therefore, the rule in effect in 1992 applies to plaintiff.

[8] The trial court referred to the Oregon Administrative Rules by their division number. Division 58 refers to a rule of the Department of Corrections (291-058-000); division 11 refers to a rule of the Oregon Criminal Justice Commission (253-011-000).

between PPS *local administrative sanctions* and PPS *revocation sanctions*.[9] Defendants further argue that the 180-day limit on incarceration applies only to revocation sanctions. In support of their argument, defendants direct this court to ORS 144.106 and ORS 144.108, respectively.

Generally, defendants argue that ORS 144.106 and ORS 144.108 represent two distinct means of addressing PPS violations. ORS 144.106 contemplates less serious violations that can be handled locally, *viz.*, *through local administrative sanctions*. ORS 144.108 contemplates more serious violations that require *revocation* of PPS and, consequently, incarceration in a state correctional facility. Specifically, defendants argue that the revisions that the legislature made to ORS 144.106 in 1991 explicate the legislature's intent to expressly include jail time as one type of local administrative sanction. *See* ORS 144.106(3) ("If the local sanction requires confinement for more than 15 days in a * * * *jail*, the board or its designated representative shall hold a hearing * * *." (Emphasis added.)).

Defendants contend that ORS 144.106 and ORS 144.108, each understood in the context of the other, demonstrate that ORS 144.108 (regarding PPS revocation sanctions) contains an express limit on the number of days an offender can be incarcerated in a state correctional facility "up to the maximum provided by rules of the State Sentencing Guidelines Board." In contrast, ORS 144.106 (regarding PPS local administrative sanctions) does not include a similar limitation on the total number of days a PPS violator can be confined in, among other things, a county jail. Thus, defendants conclude, while the legislature limited the number of days an offender can be incarcerated in a state correctional facility on a PPS revocation sanction, ORS 144.108, the legislature did not limit the number of days an offender could be confined in a county jail for a local administrative sanction, ORS 144.106.

Finally, defendants contend that their proposed construction of the PPS violation statutes is buttressed by the

---

[9] Because the parties refer to PPS sanctions involving incarceration in a state correctional facility as revocation sanctions, we do likewise.

parallel organization and flow of OAR 253-11-004. That is, OAR 253-11-004(1) is consistent with ORS 144.106, both the 1989 and 1991 versions, and OAR 253-11-004(2) through (5) are consistent with ORS 144.108.

This case presents a question of statutory interpretation, and as such, the court's task is to discern the legislature's intent in enacting ORS 144.106, ORS 144.108, and OAR 253-11-004[10] by first examining the text and context, which includes other provisions of the same statutory scheme and other related statutes, and by applying rules of statutory construction that bear directly on the interpretation of the statutory provision at issue. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). One such rule is that the court is not to "insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010. Another such rule of statutory construction is that, when the legislature includes an express provision in one statute, but omits such a provision in another statute, it may be inferred that such an omission was deliberate. *Oregon Business Planning Council v. LCDC*, 290 Or 741, 749, 626 P2d 350 (1981).

As stated previously, the legislature revised ORS 144.106 in 1991 to provide, in part:

"(1) Except as otherwise provided by rules of the Department of Corrections and the State Board of Parole and Post-Prison Supervision concerning parole and post-prison supervision violators, the supervisory authority shall use a continuum of administrative sanctions for violations of the conditions of post-prison supervision.

"(2) The sanction continuum shall include * * *

"* * * * *

"(3) If the local sanction requires confinement for more than 15 days in a restitution center, work release center or jail, the board or its designated representative shall hold a hearing * * *."

---

[10] Because, as noted, the legislature approved the sentencing guidelines adopted by the Criminal Justice Commission, their interpretation is a question of the legislature's intent that we resolve by applying the familiar principles of statutory construction announced in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

The 1991 revision is significant because in ORS 144.106(3), the legislature expressly provided for confinement in jail as a local sanction.

The 1989 version of ORS 144.106, on the other hand, did not include such an express statement. *See* ORS 144.106 (1989). Based on the legislature's revision by augmentation, plaintiff can be confined in a county jail, as a local administrative sanction, for violating a condition of his PPS.

Additionally, ORS 144.106 was not enacted in a vacuum; rather, the legislature also contemporaneously enacted ORS 144.108, and in order to discern the intent of the legislature, the court must consider both statutes. *Porter v. Hill*, 314 Or 86, 91, 838 P2d 45 (1992) (The context of a statute "includes other statutes relating to the same subject matter."). Whereas ORS 144.106 provides for a "continuum of administrative sanctions for violations of the conditions of post-prison supervision," ORS 144.108 contemplates situations in which "local sanctions are insufficient punishment for a violation" or "the violation of post-prison supervision is new criminal activity." Stated differently, ORS 144.108 applies in only two circumstances: (1) the local sanctions pursuant to ORS 144.106 are inadequate to address the violation or (2) there has been new criminal activity. In those two circumstances, the individual may be returned to a state correctional facility pursuant to a request to the board. ORS 144.108(1). If such a request is made, the board must hold a hearing, and it may imprison the offender in a state correctional facility. ORS 144.108(2).

Additionally, ORS 144.108(2), provided that a PPS violator cannot be incarcerated in a state correctional facility for more than the maximum time prescribed by what was then known as the State Sentencing Guidelines Board during the entirety of the individual's PPS sentence. Significantly, the legislature did not include a similar limitation on local sanction time, ORS 144.106. Accordingly, ORS 144.106 does not include such a limitation. Under ORS 144.106, local administrative sanctions can be imposed throughout an individual's PPS sentence and are not subject to a 180-day maximum.

Finally, ORS 144.108 incorporates the rules adopted by the State Sentencing Guidelines Board. OAR 253-11-004 provides:

"(1) The Department or its designee shall use a continuum of administrative sanctions for violation of the conditions of post-prison supervision. The sanction continuum shall include: adjustments to the level of supervision, modification of or addition to the conditions of community supervision as approved by the Board, and any other appropriate available local sanction.

"(2) If the Department or its designee finds that local sanctions are insufficient punishment for any violation of the conditions of post-prison supervision, it may request the Board to return the offender to a state correctional facility.

"(3) If requested to return an offender to a state correctional facility, the Board shall hold a hearing to determine whether prison incarceration is appropriate and may impose an appropriate term of incarceration up to ninety (90) days for a technical violation and up to one hundred and eighty (180) days for conduct constituting a crime. Except as provided in OAR 253-05-004(2) [for aggravated murder], during the full term of post-prison supervision, an offender may not be required to serve more than one hundred and eighty (180) days of incarceration for violations of the conditions of supervision.

"(4) An offender ordered to serve a term of prison incarceration as a sanction for a post-prison supervision violation is not eligible for earned-credit time or transitional leave.

"(5) An offender ordered to serve a term of prison incarceration as a sanction for a post-prison supervision violation shall receive credit for time served in a state or local correctional facility on the supervisory violation prior to the Board's imposition of a prison term sanction."

OAR 253-11-004(1) provides for a continuum of sanctions that include adjustments to the level of supervision, modification of or addition to the conditions of community supervision, and any other appropriate available local sanction. ORS 144.106 also provides for a continuum of administrative sanctions including adjustments to the level of supervision, modifications of or additions to the conditions of

supervision, and any other appropriate available local sanctions. OAR 253-11-004(1) aligns with both the 1989 and 1991 versions of ORS 144.106.

Turning to subsections (2) through (5) of OAR 253-11-004, subsection (2) begins with a conditional phrase, "[i]f * * * local sanctions are insufficient punishment" then the Board may request that the offender be returned to a state correctional facility. Subsection (3) provides a second condition, that in the event of a request to return the offender to a state correctional facility, the board is required to hold a hearing to determine whether incarceration in a state correctional facility is appropriate and, if it is, what the term of incarceration should be.

The key to construing OAR 253-11-004 is understanding what the term "incarceration" means. "Incarceration" is used a total of five times in OAR 253-11-004. "Incarceration" first appears in subsection (3) and is used twice in the same sentence, first paired with the term "prison," *i.e.*, "prison incarceration," and later without the descriptive term "prison," *i.e.*, "term of incarceration." "Incarceration" next appears later in subsection (3), again standing alone, *i.e.*, "days of incarceration." In subsections (4) and (5), the term "incarceration" is used both times in the context of "prison," *i.e.*, "prison incarceration."

The first sentence in OAR 253-11-004(3) provides for circumstances in which "prison incarceration" is contemplated. In those circumstances, where "prison incarceration" is requested, there are incarcerative limits of 90 days for a technical violation and 180 days for conduct constituting a crime. Analyzed in the context of the entire criminal sentencing scheme, I find no ambiguity. The limits to incarceration refer to only PPS revocation sanctions where an offender is returned to prison (*i.e.*, a state correctional facility) and do not apply to local administrative sanctions, including confinement in a county jail.

In sum, I would conclude that ORS 144.106 (1989) and (1991), ORS 144.108 (1989), and OAR 253-11-004 (1989) are not ambiguous and are consistent with one another. Based on the foregoing review of the text and context of the PPS violation framework, the legislature provided for two

types of PPS violation sanctions: (1) local administrative sanctions, ORS 144.106; OAR 253-11-004(1); and (2) revocation sanctions, ORS 144.108; OAR 253-11-004(2) through (5). Local administrative sanctions include confinement in a county jail, and neither the Oregon Revised Statutes nor the administrative rules place a limit on the maximum number of days an individual may be sanctioned with confinement in a county jail.

Accordingly, I respectfully disagree with the majority's dismissal of the appeal as moot, and I would affirm the trial court.