RICHARD HOSTETTER,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A144070

296 P3d 664

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for petitioner. With him on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Richard Hostetter filed the supplemental brief *pro se.*

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Brewer, Judge pro tempore.

SERCOMBE, J.

**SERCOMBE, J.**

Petitioner was convicted of murder in 1992 and then released on post-prison supervision (PPS) in 2006. However, in 2008, the Board of Parole and Post-Prison Supervision (the board) revoked petitioner's PPS after he violated the conditions of his supervision. Petitioner now seeks judicial review of an order of the board denying his request for re-release on PPS and setting a projected release date of January 17, 2015. He asserts that the board erred in imposing an 84-month incarcerative sanction for the violation, arguing that—under the then-applicable rules governing sanctions for PPS violations—the board was not permitted to impose an incarcerative sanction in excess of 90 days.[1] We review the board's order for errors of law, ORS 183.482(8), and, while petitioner acknowledges that the board's action was permissible under our prior construction of the applicable rules in *Jones v. Board of Parole*, 231 Or App 256, 260, 218 P3d 904 (2009), *rev den*, 347 Or 718 (2010), we revisit and overrule that precedent, agree with petitioner, and reverse.

The relevant facts are few and undisputed. As noted, petitioner was convicted of murder in 1992 and, after serving a term of incarceration, was released on PPS in 2006. He then committed a technical violation of the conditions of his supervision involving admitted alcohol use and failure to report to his parole officer, and the board subsequently revoked his PPS on February 11, 2008. After a future disposition hearing, the board concluded that petitioner "could not be adequately controlled in the community," denied his request for re-release on PPS, and imposed a sanction of 84 months' incarceration with a projected release date of January 17, 2015.

---

[1] Petitioner additionally invokes the Fourteenth Amendment to the United States Constitution, arguing that the board's action violated a protected liberty interest in his release date. *See generally Stogsdill v. Board of Parole*, 342 Or 332, 336-37, 154 P3d 91 (2007) (discussing potential liberty interest in release date and citing cases). Because petitioner's claim is resolved by application of administrative rules, we need not address his constitutional arguments. Finally, we reject without discussion the assignment of error raised in petitioner's *pro se* supplemental brief.

On judicial review, petitioner relies upon *former* OAR 253-11-004(3) (9/1/89) and *former* OAR 253-05-004 (9/1/89).[2] First, OAR 253-11-004(3) provides:

"If requested to return an offender to a state correctional facility, the Board shall hold a hearing to determine whether prison incarceration is appropriate and may impose an appropriate term of incarceration up to ninety (90) days for a technical violation and up to one hundred and eighty (180) days for conduct constituting a crime. *Except as provided in OAR 253-05-004(2)*, during the full term of post-prison supervision, an offender may not be required to serve more than one hundred and eighty (180) days of incarceration for violations of the conditions of supervision."

(Emphasis added.) OAR 253-05-004 then provides, in relevant part:

"(1) The term of post-prison supervision for an offender serving a life sentence [for murder] pursuant to ORS 163.105 or ORS 163.115 shall be for the remainder of the offender's life, unless the Board finds a shorter term appropriate. * * *

"(2) The limit on sanctions for post-prison supervision violations provided in OAR 253-11-004(3) shall not apply to offenders on post-prison supervision as provided by this rule."

Thus, OAR 253-11-004(3) both limits reincarceration of an offender for any single PPS violation to 90 or 180 days and places a 180-day cap on aggregate incarcerative sanctions for multiple PPS violations. That rule is then subject to OAR 253-05-004's above-quoted exception for offenders serving life sentences for murder. At issue is the scope of that exception.

Petitioner "acknowledges that this court held in [*Jones*] that the 90- and 180-day limitations in OAR 253-11-004(3) do not apply to offenders on lifetime PPS for a murder conviction." However, he contends that in *Jones* we "incorrectly interpret[ed] the relevant administrative rules" and specifically argues that the exception pertaining

---

[2] All subsequent references to those rules refer without distinction to the versions in effect in 1990 when petitioner committed the crime for which his lifetime term of PPS was imposed.

to offenders serving life sentences for murder does not apply to the limitation on *individual* sanctions but rather *only* to the 180-day *aggregate* limitation in OAR 253-11-004(3). Accordingly, petitioner contends that *Jones* "should be overruled." In support of that contention, he advances a number of interpretive arguments based upon the methodology set forth by the Supreme Court in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)—focusing on the text, context, and history of the rules at issue.[3] In addition, petitioner points out that his argument regarding the proper construction of OAR 253-11-004(3) and OAR 253-05-004 was not "squarely" presented to this court in *Jones*. Specifically, petitioner states, "The only argument presented in *Jones* was that the 90- and 180-day limits applied to the petitioner because he was not serving a 'life sentence' and thus did not come within the exemption in OAR 253-05-004(2)." That is, the argument advanced by petitioner in this case—that "the exemption applie[s] only to the 180-day aggregate 'cap' and not to the 90- and 180-day limitations"—was not before this court in *Jones*. Rather, we disposed of that issue only in passing while addressing an entirely different argument.

In *Jones*, as here, the petitioner had been subjected to a lengthy, multiyear sanction for a PPS violation. 231 Or App at 258-59. The primary issue in *Jones* was whether the petitioner, sentenced to a determinate number of years of imprisonment followed by a lifetime term of PPS, was "serving a life sentence" under OAR 253-05-004(1) so as to be subject to the exception in subsection (2) of that rule. *Id.* at 260-62. And, although we directly addressed only the

---

[3] The board's interpretation of the rules at issue is entitled to no deference, as the standard set forth in, among other cases, *Coffey v. Board of Geologist Examiners*, 348 Or 494, 509, 235 P3d 678 (2010) (an agency's plausible interpretation of its own administrative rule is entitled to deference), applies "only when the body interpreting the rule also is the body that promulgated it." *OR-OSHA v. Don Whitaker Logging, Inc.*, 329 Or 256, 262 n 7, 985 P2d 1272 (1999). That is not the case here, as the rules at issue were promulgated by the Oregon Criminal Justice Council (since renamed the Oregon Criminal Justice Commission) in connection with the Felony Sentencing Guidelines. *See State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000) ("Although the sentencing guidelines were created as administrative rules, the legislature approved them in 1989, giving them the authority of statutory law." (citing Or Laws 1989, ch 790, § 87)).

meaning of the term "life sentence," we ultimately affirmed the board's order notwithstanding the limitations set forth in OAR 253-11-004(3). We did so merely by inserting a bracketed phrase into our quotation of OAR 253-05-004(2):

> "The limit on sanctions for post-prison supervision provided in OAR 253-11-004(3) [*that is, the 90- and 180-day limitations*] shall not apply to offenders on post-prison supervision as provided by this rule."

*Id.* at 260 (internal quotation marks omitted; brackets in *Jones*; emphasis added). Thus, our insertion of the bracketed phrase, "that is, the 90- and 180-day limitations," provides the only indication that we construed the rules at issue at all in *Jones*—offering no explanation for that construction.

Nevertheless, that construction was necessary to our decision in *Jones, see State ex rel Huddleston v. Sawyer*, 324 Or 597, 621 n 19, 932 P2d 1145 (1997) (a statement is not *dictum* if it was "necessary to the outcome of the case"), and, however framed, "we do not lightly overrule our own statutory interpretations. Ordinarily, we regard them as binding precedent unless they are plainly wrong." *Aguilar v. Washington County*, 201 Or App 640, 648, 120 P3d 514 (2005), *rev den*, 340 Or 34 (2006); *accord, e.g., State v. Kittel*, 203 Or App 736, 740, 127 P3d 1204 (2006).

Notwithstanding the established principles and strong policies in favor of *stare decisis*, we revisit our brief treatment in *Jones* of the proper construction of OAR 253-11-004(3) and OAR 253-05-004. As to the propriety of doing so, notably, the Supreme Court recently stated in *Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011):

> "[T]his court's obligation when interpreting constitutional and statutory provisions and when formulating the common law is to reach what we determine to be the correct result in each case. If a party can demonstrate that we failed in that obligation and erred in deciding a case, *because we were not presented with an important argument or failed to apply our usual framework for decision or adequately analyze the controlling issue*, we are willing to reconsider the earlier case."

(Emphasis added.) (Citing *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 54, 11 P3d 228 (2000).) And, soon after *Mowry*

was decided, the Supreme Court again emphasized that principle with regard to construction of both statutes and administrative rules:

> "[W]e are mindful of the importance of *stare decisis.* As we noted in [*Mowry*, 350 Or at 698], '[s]tability and predictability are important values in the law[.]' \* \* \* *At the same time, this court has an obligation to reach what we regard as a correct interpretation of statutes and rules.* Indeed, we are so obliged whether or not the correct interpretation has even been advanced by the parties. *See Stull v. Hoke,* 326 Or 72, 77, 948 P2d 722 (1997). *Particularly when we 'failed to apply our usual framework for decision or adequately analyze the controlling issue,' we must be open to reconsidering earlier case law. Mowry,* 350 Or at 698."

*Assoc. Unit Owners of Timbercrest Condo. v. Warren,* 352 Or 583, 598, 288 P3d 958 (2012) (third and fourth brackets in original; emphases added).

With those principles in mind, we note that, in *Jones,* we were not "presented with [petitioner's] important argument"[4] and did not explicitly "apply our usual framework for decision" to "the controlling issue[.]" *Mowry,* 350 Or at 698; *cf. State v. Ciancanelli,* 339 Or 282, 290, 121 P3d 613 (2005) (noting that "the principle of *stare decisis* dictates that this court should assume that its *fully considered* prior cases are correctly decided" (emphasis added)). Nonetheless, with respect to the merits of petitioner's argument, as the Supreme Court stated in *Mowry,* "we begin with the assumption that issues considered in our prior cases are correctly decided, and 'the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent.'" 350 Or at 698 (quoting *Ciancanelli,* 339 Or at 290). As set forth below, petitioner has fulfilled his "responsibility for affirmatively persuading us that we should abandon" the construction of OAR 253-11-004(3) and OAR 253-05-004 set forth without explanation or analysis in *Jones.* Accordingly,

---

[4] Because petitioner's argument bears on both public safety and individuals' liberty, we do not hesitate to characterize it as "important." *Mowry,* 350 Or at 698. Incidentally, the petitioner in *Jones* was subjected to an incarcerative sanction of over nine years, with a projected release date of October 18, 2015. 231 Or App at 258.

we revisit that aspect of *Jones* and "squarely" address petitioner's argument as to the proper construction of those rules.

As noted, petitioner argues that the board erred in imposing an 84-month incarcerative sanction because, under OAR 253-11-004(3) and OAR 253-05-004, "the exception to sanction limitations for offenders [serving life sentences for murder] referred to the total cap of 180 days over the life of the supervision rather than to the individual 90- and 180-day sanction limits for technical or criminal violations, respectively." Petitioner's argument, absent *Jones*, therefore turns on the proper construction of OAR 253-11-004(3) and OAR 253-05-004. "In interpreting administrative rules, we apply the same principles of interpretation that are used to construe statutes." *Haskins v. Palmateer*, 186 Or App 159, 166, 63 P3d 31, *rev den*, 335 Or 510 (2003). We examine the text of the rules in context in order to discern and give effect to the intent of—in this instance—the legislature. *See Houston v. Brown*, 221 Or App 208, 222 n 10, 190 P3d 427 (2008) (Wollheim, J., dissenting) ("Because * * * the legislature approved the sentencing guidelines adopted by the Criminal Justice Commission, their interpretation is a question of the legislature's intent that we resolve by applying the familiar principles of statutory construction announced in *PGE*[, 317 Or at 610-12]."); *see also Gaines*, 346 Or at 171-73 (setting forth current interpretive methodology). Again, OAR 253-11-004(3) provides:

> "If requested to return an offender to a state correctional facility, the Board shall hold a hearing to determine whether prison incarceration is appropriate and may impose an appropriate term of incarceration up to ninety (90) days for a technical violation and up to one hundred and eighty (180) days for conduct constituting a crime. *Except as provided in OAR 253-05-004(2)*, during the full term of post-prison supervision, an offender may not be required to serve more than one hundred and eighty (180) days of incarceration for violations of the conditions of supervision."

(Emphasis added.) And, again, OAR 253-05-004 provides, in relevant part:

"(1) The term of post-prison supervision for an offender serving a life sentence [for murder] pursuant to ORS 163.105 or ORS 163.115 shall be for the remainder of the offender's life, unless the Board finds a shorter term appropriate. * * *

"(2) The limit on sanctions for post-prison supervision violations provided in OAR 253-11-004(3) shall not apply to offenders on post-prison supervision as provided by this rule."

First and foremost, the text of OAR 253-11-004(3) and OAR 253-05-004 strongly supports petitioner's position. Above all, OAR 253-05-004(2) uses the singular term "limit" when stating that "[t]he *limit* on sanctions for post-prison supervision violations provided in OAR 253-11-004(3) shall not apply to [offenders serving life sentences for murder]." (Emphasis added.) That is, the 90- and 180-day limitations on individual sanctions for technical and criminal violations, respectively, are twofold; they would therefore be appropriately referenced by the plural "limits," which nowhere appears in OAR 253-05-004. Further, the "limit" is on any number of "sanctions." The only single limit in OAR 253-11-004(3) on any number of "sanctions" is the 180-day aggregate cap for "violations of the conditions of supervision."

Moreover, within OAR 253-11-004(3), "[e]xcept as" appears *only* in the second clause pertaining to the 180-day aggregate cap, suggesting that the "limit" unambiguously refers to just that: the aggregate "limit" on incarcerative sanctions. In other words, in assessing how the rules work together, "[e]xcept as provided in OAR 253-05-004(2)" appears only in the latter portion of OAR 253-11-004(3) referencing the 180-day aggregate cap. Had the Criminal Justice Council and legislature intended that the exception reference the individual 90- and 180-day limitations as well as the aggregate limitation to which it explicitly refers, the express language of exception—that is, "[e]xcept as provided in OAR 253-05-004(2)"—would either be present in the first portion of the paragraph, in both portions, or in neither (in the latter scenario, OAR 253-05-004(2) would presumably do all of the work on its own). *See Springfield Utility Board v. Emerald PUD*, 339 Or 631, 642, 125 P3d 740 (2005)

("'[U]se of a term in one section and not in another section of the same statute indicates a purposeful omission[.]'" (quoting *PGE*, 317 Or at 611)); *Fisher Broadcasting, Inc. v. Dept. of Rev.*, 321 Or 341, 353, 898 P2d 1333 (1995) (similar). Petitioner refers to those textual arguments as "a matter of grammar and logic," persuasively arguing:

> "That is the most logical reading of how OAR 253-11-004(3) and OAR 253-05-004(2) interact with one another: an offender on lifetime PPS is subject to the 90- and 180-day limitations for PPS violations, depending on whether the sanctionable conduct was technical or criminal, but the board is not constrained by the 'cap' of 180 sanction days for the rest of the offender's life. Without that [latter] exception, an offender on lifetime PPS for murder would essentially become 'sanction-proof' after 180 days of sanction time."

While we are persuaded that petitioner's proffered construction is correct on the basis of the rules' plain text alone, his argument finds further support in the Criminal Justice Council's 1989 Oregon Sentencing Guidelines Implementation Manual. The commentary provided in connection with PPS sanctions directly addresses the rules at issue and, mirroring the text of the rules themselves, supports a construction of OAR 253-11-004(3) and OAR 253-05-004 that restrains the reach of the exception for those on lifetime PPS for murder to the former rule's aggregate limitation. As set forth in the commentary referring to OAR 253-11-004(3),

> "Section (3) directs the Board, upon receipt of a revocation request, to determine after a hearing whether prison incarceration is the most appropriate sanction for the supervision violation. *This section sets the maximum term of incarceration that may be imposed for any single violation: up to 90 days for a technical violation and 180 days for conduct constituting a crime.*
>
> "This section *also limits the total amount of incarceration that may be imposed for supervision violations at 180 days for the full term of post-prison supervision subject to the exception provided by OAR 253-05-004(2)* for offenders sentenced for a[n] Aggravated Murder (ORS 163.105) or Murder (ORS 163.115)."

Commentary, Oregon Sentencing Guidelines Implementation Manual 194 (1989) (emphases added). As petitioner correctly observes, furthering his obligation under *Ciancanelli*, 339 Or at 290, "[a]s in the plain text [of the rules], the exception is not referenced in regards to the individual sanction limits and appears only in the paragraph discussing the aggregate 'cap' restriction." Thus, petitioner persuasively argues, "the drafters of OAR 253-11-004(3) regarded the exception for offenders on lifetime supervision for murder [set forth in OAR 253-05-004] to apply to the total 'cap' on sanction days over the entire term of PPS and not to the 90- and 180-day sanction limits on individual violations."

Finally, petitioner advances a compelling argument illustrating the policy implications—and, more importantly, the indications of contrary intent on the part of the Criminal Justice Council and the legislature—applicable to the construction of OAR 253-11-004(3) and OAR 253-05-004 adopted by this court in *Jones*:

> "The board's interpretation and application of those rules destroys the determinate sentencing scheme for murder offenders envisioned by the criminal justice commission when it created the guidelines. If the board is correct, it may, upon finding a violation of PPS, impose a further term of incarceration of unspecified length, out to the sentence expiration date—the offender's death—for even a technical violation. That is, by definition, an *indeterminate sentence*, and is indistinguishable from the parole system that was superseded by the guidelines in 1989."

(Citations omitted; emphasis in original.) Put simply, that argument is difficult to ignore.

For the foregoing reasons, insofar as *Jones* construed OAR 253-11-004(3) and OAR 253-05-004, we overrule that construction and agree with petitioner that the Criminal Justice Council and legislature intended that the exception for those on lifetime PPS for murder set forth in OAR 253-05-004 apply only to OAR 253-11-004(3)'s 180-day *aggregate* limitation. Accordingly, the board erred in imposing an incarcerative sanction in excess of 90 days

for petitioner's technical violation of the conditions of his supervision.

  Reversed and remanded.